**Andrea E. BOYD, Plaintiff–Appellant,**

**v.**

**HARDING ACADEMY OF MEMPHIS, INC., Defendant–Appellee.**

No. 95–5945.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1996.

Decided July 9, 1996.

Richard L. Rikard (argued and briefed), Memphis, TN, for Plaintiff-Appellant.

Jeff Weintraub (argued), Weintraub, Robinson, Weintraub, Stock, Bennett, Ettinghoff & Grisham, Memphis, TN, Richard M. Murrell (briefed), Memphis, TN, for Defendant-Appellee.

Before: KENNEDY, JONES, and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiff-appellant Andrea E. Boyd appeals the district court's judgment for defendant-appellee Harding Academy of Memphis, Inc. ("Harding") in this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On appeal, the issue is whether the district court erred in holding that defendant's articulated legitimate, non-discriminatory reason was not a pretext for illegal discrimination. For the following reasons, we affirm the judgment of the district court.

I.

Defendant Harding is a religious school affiliated with the Church of Christ and located in Memphis, Tennessee. It is made up of eight campuses and staffed by approximately 130 teachers. All faculty members are required to be Christians, and a preference is given to Church of Christ members. Dr. Harold Bowie serves as its President and CEO. One of the eight campuses contains the preschool facility known as Little Harding, and Brenda Rubio serves as Little Harding's director. Rubio's duties as director include taking applications, interviewing applicants, and recommending those who are to be hired or terminated. However, Dr. Bowie is the only person with the authority to terminate the employment of teachers at Harding.

Plaintiff Boyd was hired for a preschool teaching position at Little Harding in January 1992. Plaintiff knew that Harding was a church-related school and indicated on her application for employment that she had a Christian background and believed in God. The faculty handbook given to plaintiff after she was hired to work at Harding read: "Christian character, as well as professional ability, is the basis for hiring teachers at Harding Academy. Each teacher at Harding is expected in all actions to be a Christian example for the students...." Plaintiff was not married at any time during her employment by Harding, and she testified at trial that she was never told that she would be terminated if she engaged in sex outside of marriage. She further testified that she did not think that sex outside of marriage was against the tenets of all faiths, but she could not name a religious entity that teaches that sexual activity among unmarried persons is appropriate.

In May 1992, plaintiff had a miscarriage with some minor complications. She told Rubio about her condition, and pursuant to her doctor's request, she asked Rubio for a few days off. Rubio agreed and told plaintiff that she would pray for her. Rubio testified that she thought to herself at the time that if Boyd had been pregnant, she would have had to terminate her. Rubio did not report this incident to Dr. Bowie.

In February 1993, Sharon Cooper, Rubio's assistant, told her that plaintiff Boyd might be pregnant. Rubio reported this information to Pat Bowie, her superior and Dr. Bowie's wife. After checking with Dr. Bowie, Ms. Bowie told Rubio to determine whether Boyd was pregnant in a direct conversation with her and to terminate her if she was pregnant because it would establish that she had engaged in extramarital sexual intercourse.[1]

On February 10, 1993, Rubio called Boyd into her office for a meeting. Cooper was also present and was taking notes. At the meeting, Rubio asked Boyd if she was pregnant, and Boyd answered affirmatively. Rubio then told plaintiff that because she was pregnant and unwed,[2] she set a bad example for the students and parents and would therefore have to be terminated. However, Rubio informed plaintiff that if she were to marry the father of the child, she would be eligible for re-employment. During the course of the meeting, Rubio also told plaintiff Boyd about Toni Climer, another teacher at Little Harding who had become pregnant while unwed. Climer was terminated, but was rehired when she married the father of her child.

At trial, Dr. Bowie described several occasions during his tenure when he terminated employees for violating Harding's prohibition against sex outside of marriage. The district court summarized Bowie's testimony on this subject as follows:

> In 1961, James Rogers was terminated for living with a woman who was not his wife.

Approximately ten (10) years ago, another male, Bob Alley, who was then the principal or academic dean and who had worked at Harding Academy approximately twenty (20) years, was terminated for sexual immorality. In terms of female employees terminated for engaging in sex outside of marriage, Dr. Bowie testified that Betty Madewell Dover, an elementary school teacher, was involved with a man to whom she was not married and was terminated based on this conduct. (No pregnancy resulted in Ms. Dover's case.) Another female, Wanda Watson, was also terminated based on her involvement in an extramarital relationship, in which no pregnancy resulted.

There were no situations described at trial in which Dr. Bowie was aware of an employee's sexual activity outside of marriage and failed to take action. Finally, defendant presented evidence at trial to show that at least six married women who became pregnant while working at Harding remained employed there during and after their pregnancies.

On February 16, 1993, plaintiff Boyd filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant's termination of her was on the basis of her pregnancy and constituted sex discrimination under Title VII. On June 30, 1993, the EEOC completed its investigation and issued a right to sue letter. On September 29, 1993, plaintiff filed a complaint in federal district court.

On February 28, 1994, defendant Harding filed a motion to dismiss or, in the alternative, for summary judgment, which the district court denied. On August 25 and 26, 1994, the district court held a non-jury trial, and on May 31, 1995, it entered judgment for defendant. This timely appeal followed.

## II.

Title VII provides that "[i]t shall be an unlawful employment practice for an employ-

---

1. Although hypothetically plaintiff could have become pregnant by means of artificial insemination, during her conversations she gave no indication that this was so.

2. Rubio testified that she was trying to be "as gentle as [she] could" with Boyd and that by saying that plaintiff was pregnant and unwed, she actually meant that plaintiff had engaged in sex outside of marriage.

er ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress enacted the Pregnancy Discrimination Act ("PDA"), which amended Title VII to specify that sex discrimination under Title VII includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 89, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). By incorporating the PDA into Title VII, Congress manifested its belief that discrimination based upon pregnancy constitutes discrimination based upon sex. Therefore, it is now well settled that a claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII. *EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir.), *cert. denied*, 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992); *Maddox v. Grandview Care Center, Inc.*, 780 F.2d 987, 989 (11th Cir.1986).

■ A plaintiff claiming disparate treatment under Title VII must first establish a prima facie case of unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to make out a prima facie case of pregnancy discrimination, a plaintiff must initially show: (1) that she was pregnant; (2) that she was qualified for her job; (3) that she was subjected to an adverse employment decision; and (4) that there is a nexus between her pregnancy and the adverse employment decision. *See LaFleur v. Westridge Consultants, Inc.*, 844 F.Supp. 318, 324 (E.D.Tex.1994). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. If the defendant satisfies this burden, the *McDonnell Douglas* presumption of intentional discrimination "drops out of the picture." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

The employee must then prove by a preponderance of the evidence that the defendant intentionally discriminated against her. She may satisfy this burden by showing that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for intentional discrimination. *Id.*

■ Title VII does provide for certain religious exemptions. It does not apply "to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e–1(a). This provision does not, however, exempt religious educational institutions with respect to all discrimination. It merely indicates that such institutions may choose to employ members of their own religion without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination.

■ Plaintiff Boyd claims that the district court's judgment in favor of defendant Harding was improper. The district court found that plaintiff failed to meet her burden of proof in establishing a Title VII gender discrimination claim. The court determined that defendant Harding articulated a legitimate, non-discriminatory reason for plaintiff's termination when it stated that plaintiff was fired not for being pregnant, but for having sex outside of marriage in violation of Harding's code of conduct. The court held that plaintiff failed to show that defendant's proffered non-discriminatory reason for plaintiff's termination was a pretext for illegal discrimination and entered judgment for defendant. Plaintiff argues on appeal that this holding by the district court was erroneous and attempts to prove that defendant Harding's reason was a pretext for discrimination. We review a district court's conclusions of law de novo and its findings of fact for clear error. *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989).

■ First, plaintiff argues that the district court's judgment for defendant was erroneous because of its finding that Brenda Rubio did not have the authority to terminate plaintiff Boyd. Plaintiff argues that Dr. Bowie delegated his authority to Rubio, and, therefore, defendant Harding was bound by Rubio's statements and actions. The district court found that Dr. Bowie was the only person with authority to decide whether plaintiff should be terminated, and that he did not delegate this authority to Rubio. Instead, Dr. Bowie provided specific instructions that Rubio should terminate plaintiff if she was pregnant because her pregnancy would confirm that she had engaged in extramarital sex. Plaintiff has presented no evidence on appeal that demonstrates that Rubio was given any discretion with regard to her decision to terminate plaintiff or that the actual decision to terminate her was made by anyone other than Dr. Bowie.

■ Second, plaintiff argues that the district court's judgment for defendant was erroneous because Rubio applied Harding's policy against extramarital sex in a discriminatory manner. Plaintiff asserts that Rubio reported to Dr. Bowie only when she became pregnant as a result of sex outside of marriage and not when she previously had a miscarriage. However, plaintiff did not show that Rubio knew of and failed to report any other incidences of proscribed sexual conduct by other Little Harding employees. Although there were single mothers teaching at Little Harding who had children out of wedlock, plaintiff presented no proof that established that Rubio was actually aware that any employees were engaging in sex outside of marriage during the time they were employees of Little Harding. There is no proof that Dr. Bowie, in whom the authority to hire and fire resided, applied the policy in a discriminatory manner. Therefore, we agree with the district court that Rubio's "isolated inconsistent application of ... defendant's policy" was not sufficient to show that defendant's articulated nondiscriminatory reason

was not the real reason for plaintiff's termination.[3]

Third, plaintiff argues that the district court erred in holding that defendant's reason was not a pretext based on the fact that Rubio and Dr. Bowie used the phrase "pregnant and unwed" in conversations with plaintiff Boyd and each other. However, Rubio explained at trial that when she said "pregnant and unwed," she actually meant "had engaged in sex outside of marriage," and the district court found this explanation to be credible. Furthermore, Rubio's explanation is consistent with Harding's policy and with Dr. Bowie's statement that his reason for terminating plaintiff was that she had extramarital sex. Boyd's action violated the code of conduct that Harding teachers are required to follow. Although Title VII requires that this code of conduct be applied equally to both sexes, *see Dolter v. Wahlert High School,* 483 F.Supp. 266, 271 (N.D.Iowa 1980), defendant presented uncontroverted evidence at trial that Dr. Bowie had terminated at least four individuals, both male and female, who had engaged in extramarital sexual relationships that did not result in pregnancy.

Finally, plaintiff argues that the district court erred in finding that defendant's articulated reason was not a pretext because Rubio did not ask plaintiff if she was still having sex outside of marriage, when the last occasion of sex outside of marriage occurred, or if she was still seeing the father of the child. However, Boyd was being fired for violating Harding's policy against extramarital sex, and the duration or continuing nature of the violation made no difference. Therefore, Rubio's failure to ask these questions does nothing to prove pretext. We conclude that the district court was correct in holding that defendant articulated a legitimate, non-discriminatory reason by stating that it fired plaintiff Boyd not because she was pregnant, but for engaging in sex outside of marriage, and that plaintiff Boyd did not meet her

**3.** In further support of her argument, plaintiff points to the fact that Rubio reported Toni Climer's pregnancy to Dr. Bowie, resulting in her termination. However, in light of the fact that plaintiff was unable to show any occasions where Rubio was aware of and failed to report a teacher's extramarital sexual activity that did not result in pregnancy, Rubio's report about Climer does not demonstrate a significantly inconsistent application of Harding's policy.

burden to prove by a preponderance of the evidence that this articulated reason was actually a pretext for illegal discrimination.[4]

### III.

For the reasons stated, the judgment of the district court is hereby **AFFIRMED.**

---

**4.** In its brief, defendant alternatively argues that plaintiff served as a role model for the students at the school; therefore, "non-pregnant out of wedlock" status was a bona fide occupational qualification (BFOQ). *See Vigars v. Valley Chris-* *tian Center of Dublin, California,* 805 F.Supp. 802 (N.D.Cal.1992). However, our holding here makes it unnecessary for us to address this argument.