## McCONAUGHY, Appellant,

v.

## BOSWELL OIL COMPANY, Appellee.

[Cite as *McConaughy v. Boswell Oil Co.* (1998), 126 Ohio App.3d 820.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970218.

Decided March 27, 1998.

822

*Tobias, Kraus & Torchia* and *Sharon Sobers,* for appellant.

*Frost & Jacobs, David T. Croall* and *Michael B. McShea,* for appellee.

GORMAN, Judge.

Plaintiff-appellant Cynthia J. McConaughy appeals from the trial court's entry of summary judgment in favor of her former employer, defendant-appellee Boswell Oil Company, on her claims alleging gender discrimination in violation of R.C. 4112.02 and the Pregnancy Discrimination Act, Section 2000e *et seq.,* Title 42, U.S.Code ("PDA"), both of which proscribe termination because of pregnancy. Because genuine issues of material fact remain as to whether she was afforded a reasonable period of pregnancy leave, summary judgment was improvidently granted, the entry of the trial court is reversed, and this cause is remanded.

## FACTS

McConaughy was hired as a secretary for Boswell Oil in June 1993. In March 1994, after receiving a satisfactory performance appraisal, McConaughy learned that she was pregnant. She informed Boswell Oil of her pregnancy and of her intent to remain an employee of the company after the birth of her child. When McConaughy inquired about the company's maternity-leave policy, she was told that the company had been in existence for seventy-five years without needing a maternity-leave policy. Despite the absence of a formal maternity-leave or disability-leave policy, at least one employee, Sylvia Jenks, was allowed to remain "off and on" work for nearly two years due to back problems. For nearly eighteen months of that period, Jenks received full compensation. Her accumulated time away from work exceeded six months. After returning to work, she was permitted to take early retirement in 1989.

In June 1994, McConaughy was involved in an auto accident which aggravated pre-existing back injuries. In August 1994, she began to suffer back pain at work. Her doctor advised that she remain off work for four weeks. In August and again on September 9, 1994, McConaughy consulted James Laskey, Boswell Oil's controller, regarding her leave. She was informed that she could have twelve weeks of leave under the Family Medical Leave Act of 1993, Section 2601 *et seq.,* Title 29, U.S.Code ("FMLA"), and if the twelve-week leave expired before she was ready to return to work, she would be terminated.

McConaughy claimed that her back problem was exacerbated by pregnancy. On September 15, 1994, McConaughy's doctor determined that she should remain off work until after her baby was born. McConaughy notified Boswell Oil of her need to take this leave. On September 26, 1994, Boswell Oil informed McConau-

ghy, by letter, that the company was aware that her doctor had certified that she could not return to work prior to birth, and that it was in Boswell Oil's best interest to fill her position with a full-time employee. This letter contained an enclosure detailing the company expectations and employee obligations under the FMLA.

By Boswell Oil's reckoning, McConaughy's FMLA leave was calculated to expire on November 11, 1994. On November 12, McConaughy gave birth to a son. Two days later, Boswell Oil terminated her employment. Not until November 3, 1994, did Boswell Oil send a letter to other employees providing their initial notification of employee rights under the FMLA.

On May 18, 1996, McConaughy filed a complaint against Boswell Oil, alleging wrongful discharge in contravention of R.C. 4112.02 and the PDA. In accordance with the trial court's amended case-management order, in November 1996, the parties filed cross-motions for summary judgment. After the motions were filed, McConaughy sought to amend her complaint to add a count stating a violation of the FMLA. On January 29, 1997, the trial court denied McConaughy's motion to amend her complaint and granted Boswell's motion for summary judgment without opinion. McConaughy has brought this timely appeal from that entry.

## SUMMARY–JUDGMENT STANDARD

The function of summary judgment is to determine from the evidentiary materials whether triable factual issues exist. A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Civ.R. 56(C).

The moving party "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

If the moving party discharges that burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R.

56(E)[1] showing that a triable issue of fact exists. *Id.* at 293, 662 N.E.2d at 274; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

## TITLE VII CLAIM

In McConaughy's third assignment of error, she contends that the trial court erred in entering summary judgment for Boswell Oil on her claim made pursuant to Title VII of the Civil Rights Act. Ohio courts have concurrent subject-matter jurisdiction with federal courts over actions brought pursuant to Title VII. *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650, paragraph one of the syllabus. Therefore, this court will follow the decisions of the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit and the relevant federal statutes when determining the merits of this claim.

Title VII, as amended by the Pregnancy Discrimination Act, makes it an unlawful employment practice for an employer to discharge an employee "because of * * * pregnancy, childbirth, or related medical conditions." Sections 2000e–2(a)(1) and 2000e(k), Title 42, U.S.Code; *Fannon v. AAP St. Marys Corp.* (C.A.6, 1997), 124 F.3d 197. The clearly established framework for analyzing Title VII cases thus applies, in large part, to the analysis of a claim under the PDA. First, the employee has the burden of proving a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677–678. The function of the *McDonnell Douglas* prima facie test is to allow the plaintiff to raise an inference of discriminatory intent indirectly, because, as the Supreme Court explained in *Furnco Constr. Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957, 967, "we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors * * * [since] * * * more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." If the employee is successful in demonstrating her prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the discharge. *Id.* The burden then shifts back to the employee to demonstrate that the reasons offered by the employer are pretextual. *Id.*

---

1. In ruling on an assignment of error dealing with the granting or denial of a motion for summary judgment, this court must review the same evidentiary material provided to the trial court for review. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141; *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. McConaughy's December 5, 1997 motion purporting to "fix a clerical error" by "attach[ing] an exhibit" that was "not in fact attached" to her motion for summary judgment is a nullity.

To establish a prima facie case of discrimination under Title VII, a plaintiff may prove her claim through either direct evidence, statistical proof, or the *McDonnell Douglas* test. Under that test, the plaintiff must show that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position she lost, and (4) she was replaced by someone outside the protected class, or that "a comparable non-protected person was treated better." *McDonnell Douglas v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678; *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582.

Boswell Oil urges this court to adopt the prima facie analysis apparently employed in the trial court and found in *Boyd v. Harding Academy of Memphis* (C.A.6, 1996), 88 F.3d 410. This test would require McConaughy to demonstrate, *inter alia*, that there was a nexus between her pregnancy and the adverse employment decision.

Unlike other Title VII provisions, however, as the United States Court of Appeals for the Sixth Circuit noted five months after *Boyd*:

"When Congress enacted the PDA, * * * it provided additional protection to those 'women affected by pregnancy, childbirth or related medical conditions' by expressly requiring that employers provide the same treatment of such individuals as provided for 'other persons not so affected but similar in their ability or inability to work.'" *Ensley-Gaines v. Runyon* (C.A.6, 1996), 100 F.3d 1220, 1226, quoting from Section 2000e(k), Title 42, U.S.Code.

The court continued:

"The PDA explicitly alters the analysis to be applied in pregnancy discrimination cases. While [a] Title VII [sexual-discrimination claim] generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated 'in all respects' [citations omitted], the PDA requires only that the employee be similar in his or her 'ability or inability to work.'" *Ensley-Gaines v. Runyon*, 100 F.3d at 1226.

Therefore, to establish a prima facie case of discrimination on the basis of pregnancy in violation of the PDA, McConaughy must show (1) that she was pregnant, (2) that she was subjected to an adverse employment decision, (3) that she was qualified for the job she lost, and (4) "that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits." *Id.*

Here, there is no factual dispute between the parties regarding the first three elements. However, genuine issues of material fact remain as to whether another employee, who was not pregnant, and who was similarly unable to return

to work for an extended period, was not terminated. McConaughy contends that Sylvia Jenks, a former non-pregnant employee, remained on medical disability leave for a longer time than McConaughy did and was permitted to return to her job. Boswell Oil does not dispute that Jenks was allowed to be on and off work for a little over two years. Rather, Boswell Oil contends that Jenks is not a similarly situated or "comparable" employee because she was a long-term employee with over ten years of service. Proof that Jenks and McConaughy are comparable in any way other than their inability to work is not an element of McConaughy's prima facie case.

As it is unrebutted that Jenks and McConaughy were similarly situated, within the meaning of the PDA, and that they were treated differently as to their ability to return to work, McConaughy presented sufficient evidence, in accordance with *McDonnell Douglas* and *Ensley–Gaines*, establishing all the elements of a prima facie case of sex discrimination.

▮ With a prima facie case thus established, there is contradictory evidence of record as to the nondiscriminatory reason for termination given by Boswell Oil: McConaughy's absence from work after exhausting the twelve-week leave period. The company contends that, by adopting the FMLA and affording a twelve-week leave period, it has provided a reasonable leave period for all disability leaves. McConaughy contests the reasonableness of this period when applied to a pregnancy complicated by a related medical condition. She argues that the FMLA does not provide an absolute measure of what is a reasonable leave period. For example, no provision of the FMLA is to supersede any provision of state or local law that provides greater leave rights. Section 825.701, Title 29, C.F.R. McConaughy contends that requiring her to return to work several days after the birth of a baby was unreasonable.

McConaughy also argues and points to evidence of record that Boswell Oil's proffered reasons were pretextual. She claims that she should not be held to a twelve-week period of leave because the company had no leave policy when she became pregnant and determined that it would adopt the FMLA only as a direct response to her pregnancy. See, *e.g., Piraino v. Internatl. Orientation Resources* (C.A.7, 1996), 84 F.3d 270, 274–275 (summary judgment was inappropriate when the reason why the employer changed a maternity-leave policy was in dispute). Boswell Oil asserts that it adopted the leave policy because it was faced with its first leave of absence after the FMLA's effective date. Boswell argues that *Piraino* is factually distinguishable because Boswell posted a government-supplied summary of the FMLA on a company bulletin board more than a year before McConaughy's request for a leave. Therefore, genuine issues of material facts concerning the allegedly legitimate, nondiscriminatory reasons stated by

Boswell Oil also make summary judgment inappropriate. The third assignment of error is sustained.

In McConaughy's second assignment of error, she asserts that "the court erred in finding that [Boswell Oil's] FMLA leave policy controlled the length of [her] leave." Appellant's Brief at 24. Since the trial court rendered summary judgment for Boswell without opinion, it is unknown whether the trial court ruled that the FMLA controlled the length of her leave. This assignment of error is rendered moot by the disposition of the first and third assignments of error. App.R. 12(A)(1)(c). Nothing in the resolution of this assignment of error, however, is to be construed to preclude or to require, on remand, consideration of the FMLA, or Boswell's adoption of the FMLA as its leave policy.

## R.C. 4112.02 CLAIM

McConaughy next asserts that the trial court erred in granting summary judgment to Boswell Oil on her claim of unlawful pregnancy discrimination made pursuant to Ohio's discrimination statute. R.C. 4112.02(A) provides that it is an unlawful discriminatory practice for any employer to discharge without just cause any person "because of the sex * * * of any person." A victim of an unlawful discriminatory practice has a private right of action under R.C. 4112.99.

The term "because of the * * * sex of any person" means "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions." R.C. 4112.01(B). Echoing the language of the PDA, R.C. 4112.01(B) further provides:

"Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work * * *."

According to Ohio Adm.Code 4112–5–05(G)(5), if an employer has a leave policy, a female employee "must be granted a reasonable leave on account of childbearing." If there is no leave policy, the employee must be provided a leave of absence "for a reasonable period of time." Ohio Adm.Code 4112–5–05(G)(6).

In *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131, the Ohio Supreme Court held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." This does not necessarily mean that the protections of the PDA, the FMLA, and R.C. Chapter 4112 are coextensive. See *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613. For example, the reasonable time for and following childbirth identified in R.C. 4112.01(B) and in the Ohio

Administrative Code may afford longer leave periods than the FMLA's twelve-week period. See Section 825.701, Title 29, C.F.R.

For claims of sexual discrimination made pursuant to R.C. Chapter 4112 in which there is no direct or statistical evidence of discrimination, the analytical framework of *McDonnell Douglas v. Green* is employed. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276.

In order for McConaughy to establish a prima facie case of pregnancy discrimination under R.C. 4112.02, she must initially demonstrate (1) that she was pregnant; (2) that she was discharged, and (3) that a non-pregnant employee, similar in ability or inability to work, was treated differently. See *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351, 690 N.E.2d 897; *Cechowski v. Goodwill Industries* (May 14, 1997), Summit App. No. 17944, unreported, 1997 WL 270523.

Once these elements are established, the *McDonnell Douglas v. Green* burdenshifting framework is employed. The employer may articulate a nondiscriminatory reason for the discharge. If the employer does so, the burden shifts to the employee to demonstrate, by a preponderance of evidence, that the reasons proffered by the employer are pretextual. *Frantz v. Beechmont Pet Hosp.*

Again, in this case, there is no factual dispute between the parties regarding the first two elements of the prima facie case. However, genuine issues of material fact remain as to whether a similarly situated non-pregnant employee was treated differently than McConaughy.

Under the Ohio statutory scheme, Boswell Oil's nondiscriminatory justification for discharge is more problematic than under the federal analysis. McConaughy contends that she was not given a reasonable period of maternity leave as contemplated by Ohio Adm.Code 4112–5–05(G)(5) and (6). She argues that the FMLA does not provide an absolute measure of what is a reasonable leave period and that requiring her to return to work several days after the birth of a baby was unreasonable. As genuine issues of material fact remain as to whether Boswell Oil provided a reasonable period of leave, summary judgment was improvidently granted. The first assignment of error is sustained.

## AMENDING THE COMPLAINT

In her fourth assignment of error, McConaughy argues that the trial court erred by denying her leave to amend her complaint to add a violation of the FMLA itself. Civ.R. 15(A) provides that, after a responsive pleading is served, leave to amend a pleading should be freely given by the trial court when justice so requires. Here, however, it is patent that McConaughy's motion to amend her

complaint was not timely filed. She moved for amendment after the completion of discovery and after cross-motions for summary judgment had been filed.

This court's role is to determine whether the trial court's decision was an abuse of discretion, not whether it was the same decision this court would have made. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. As there is no evidence that the trial court's decision was unreasonable, arbitrary, or unconscionable, the fourth assignment of error is overruled. Nothing, however, in the resolution of this assignment of error precludes or requires either party on remand from employing the FMLA as evidence of what constitutes a reasonable period of pregnancy leave.

## CONCLUSION

The entry of summary judgment for Boswell Oil is reversed, and this cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

PAINTER, P.J., and DOAN, J., concur.