Rochelle WOODWORTH, Plaintiff,

v.

CONCORD MANAGEMENT LIMITED, Defendant.

No. C–3–99–673.

United States District Court, S.D. Ohio, Western Division.

Sept. 25, 2000.

---

Robert Mark Henry, Vandalia, OH, for Plaintiff.

G. Randall Ayers, Darryl Kates, Dinsmore & Shohl, Cincinnati, OH, Steven Farbman, Martin Saunders, Jackson Lewis Schnitzler & Krupman, Pittsburgh, PA, for Defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 4–2).

RICE, Chief Judge.

This litigation arises out of the termination of Plaintiff Rochelle Woodworth ("Woodworth") by her employer Concord Management Ltd. ("Concord"), while she was on a leave of absence following the birth of her second child. According to Plaintiff, she began working for Concord during November, 1995, through a temporary agency as a full-time leasing agent for Defendant's property, Pepper Tree Village, located in Fairborn, Ohio. In March, 1996, Plaintiff, as a Concord employee, began working as a full-time Assistant Manager for that property. In September of 1998, Plaintiff began working as Assistant Manager for another Concord property, The Club at Spring Valley, in Miamisburg, Ohio, a position she held until her termination in June, 1999. Plaintiff, her husband, and her five-year old son resided at The Club at Spring Valley.

In the latter half of 1998, Plaintiff learned that she was pregnant with her second child. On January 26, 1999, she submitted a request for unpaid medical leave to Concord, pursuant to Defendant's written disability and medical leave policy.[1] Plaintiff's request was approved, and Concord later specified that her leave should begin after her last day of work on March 11, 1999, and continue until her anticipated return date of June 11, 1999. Defendant's Regional Manager and Plaintiff's supervisor subsequently extended Plaintiff's leave and return-to-work date to June 14, 1999.

Plaintiff gave birth to a daughter on February 28, 1999. On June 4, 1999, Concord's Human Resources Director, William Pastor, informed Plaintiff that her position as Assistant Manager had been terminated. The termination letter indicated that Defendant had held her position open for her "as long as practical[;] however this has caused the performance of the property to suffer."[2] Plaintiff states that she was ready and willing to return to work on June 14, 1999, and that, although Defendant has acknowledged its mistake, it has refused to reinstate her to her position as Assistant Manager at The Club at Spring Valley.

In response to her termination, Plaintiff brought suit against Concord in the Montgomery County Court of Common Pleas (Doc. # 1). She set forth three claims for relief, to wit: 1) a state law claim of sex (pregnancy) discrimination, in violation of Ohio Rev.Code §§ 4112.02 and 4112.99; 2) a state law claim for breach of contract; and 3) a state law claim for promissory estoppel. On December 28, 1999, Defendant removed the action to this Court, based on diversity of citizenship.

---

1. According to the Employee Request for Time Off form, attached as Exhibit A to her Complaint, Woodworth's leave request was categorized as Family and Medical Leave, not Disability Leave.

2. The termination letter has been attached to Plaintiff's Complaint as Exhibit B.

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. # 4–2). For the reasons assigned, Defendant's Motion is SUSTAINED IN PART and OVERRULED IN PART.

I. *Standard for Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v.*

*Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Pregnancy Discrimination Claim (Count One)*

Ohio Rev.Code § 4112.02(A) prohibits employers from discharging without just cause any person because of the employee's sex. The term "because of the ... sex of any person" means "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions." *Id.* § 4112.01(B). Section 4112.01(B) further provides: "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work...." A female employee must be granted a reasonable leave on account of childbearing. Ohio Admin. Code 4112–5–05(G)(5) and (6); *McConaughy v. Boswell Oil Co.,* 126 Ohio App.3d 820, 711 N.E.2d 719 (1998).

To establish a pregnancy discrimination claim under Chapter 4112, a plaintiff may employ one of two methods. Under the first path, the Plaintiff may present direct evidence of discrimination. Alternatively, the plaintiff may establish a circumstantial case of discrimination, employing the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mauzy v. Kelly Services, Inc.,* 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276 (1996); *McConaughy,* 711 N.E.2d at 725. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. To set forth a *prima facie* case of pregnancy discrimination under R.C. 4112.02, Plaintiff must establish: (1) that she was pregnant; (2) that she was discharged, and (3) that a non-pregnant employee, similar in ability or inability to work, was treated differently.[3] *McCo-*

---

**3.** Some courts have not required a plaintiff to establish disparate treatment as part of the *prima facie* case. Rather, she must establish that she was pregnant, discharged, and re-

*naughy,* 711 N.E.2d at 725; *Frantz v. Beechmont Pet Hosp.,* 117 Ohio App.3d 351, 690 N.E.2d 897 (1996).

■ Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant offers a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the defendant's reason is not real, but a pretext for discrimination. *Id.; McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. 1817. The plaintiff may meet this burden by showing: (1) that the stated reason had no basis in fact, (2) that the stated reason was not the actual reason, or (3) that the stated reason was insufficient to explain the defendant's action. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The burden of persuasion, however, always remains with the plaintiff. *See Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Defendant argues that Plaintiff has not established a *prima facie* case of pregnancy discrimination. In support of that argument, it asserts that Concord's Employee Manual ("Manual") makes clear that an employee's position may not be held open during a leave of absence. It further states that she has not alleged that a non-pregnant employee, similar in ability to work, was treated differently than she. Defendant analogizes this case to *Soreo–Yasher v. First Office Management,* 926 F.Supp. 646 (N.D.Ohio 1996), in which the district court concluded that an employer did not discriminate on the basis of preg-

nancy against an employee who was permanently replaced after being approved for maternity leave. In that case, the employer told the employee prior to her leave that her position might be temporarily assumed by another person during her leave, but she was not told that she might be permanently replaced. Just prior to her leave, the company created a policy that a position would not be held open for an employee while on a leave of absence. Plaintiff was permanently replaced on the first day of her leave. The court granted the defendant's motion for summary judgment, stating that there was no evidence that the plaintiff was replaced because of her pregnancy. It stated that there was no evidence that the plaintiff had been treated differently than nonpregnant employees who were on leave for a similar period of time, and no evidence of a causal connection between the plaintiff's pregnancy and the defendant's decision to replace her.

Upon reviewing Plaintiff's affidavit, the Court concludes that she has provided evidence demonstrating a *prima facie* case of pregnancy discrimination. It is undisputed that Plaintiff was pregnant, and that she gave birth to her second child on February 28, 1999. The parties further agree that Plaintiff was terminated from her position as Assistant Manager of The Club at Spring Valley. Plaintiff has provided evidence that she was qualified for her position. In her affidavit, Plaintiff also provides evidence that an individual who was similarly able or not able to work was treated differently. Specifically, Plaintiff states that she was replaced by Amy Robertson, who was unable to work for at least three months due to a non-pregnancy related injury and surgeries. Plaintiff states

placed by a nonpregnant person. *Dirham v. Van Wert County Hosp.,* 2000 WL 621139

(N.D.Ohio Mar.3, 2000)(citing *Franz, supra* ).

that Ms. Robertson was on non-pregnancy related medical leave due to her condition and that she was allowed to return to work without penalty. She further swore in her affidavit that she was not aware of any other Concord employee who had been terminated while taking previously approved medical leave.[4] Accordingly, unlike the plaintiff in *Soreo–Yasher*, Plaintiff has presented evidence of a *prima facie* case of pregnancy discrimination.

■ Defendant's argument that the Manual provides that an employee's position may not be held open during a leave of absence is applicable to its legitimate, nondiscriminatory reason for Plaintiff's discharge. By letter dated June 4, 1999, Concord's Human Resources Director, William Pastor, informed Plaintiff that "[d]ue to critical business needs at The Club at Spring Valley community, your position has been filled and your employment as Assistant Manager with Concord Management Limited as been terminated ... We can no longer continue to operate the property without a permanent, fully staffed office." (Compl.Ex.B). Thus, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination.

■ Because Concord has stated a legitimate, nondiscriminatory reason for Plaintiff's discharge (*i.e.*, understaffing), the burden then shifts to back to her to provide evidence that the reason is pretextual. In her affidavit, Plaintiff has provided evidence to satisfy that burden. Specifically, she has stated that prior to her leave, her office often worked with only three employees. (Woodworth Aff. ¶ 7). Occasionally, a part-time leasing agent was hired as a fourth employee. Plaintiff further states that during most of the time that she was on leave, the office was staffed by five employees—more than had worked prior to Plaintiff's maternity leave (*id.* ¶ 9). In addition, Plaintiff avers that Defendant, presumably in the person of Mr. Pastor, informed her that her discharge was "a mix up," yet it refused to reinstate her (*id.* ¶ 10). Thus, construing Plaintiff's evidence in the light most favorable to her, she has provided evidence that Defendant's proffered reason for her discharge (*i.e.*, understaffing) was not the actual reason for that action.

■ In its motion and reply memorandum, Defendant argues that it is nonetheless entitled to judgment as a matter of law, because Plaintiff was capable of working at the time she was discharged and because she had received adequate maternity leave at that time. Specifically, Defendant asserts that Ohio law does not require an employer to grant leave to an employee who does not have a medical condition necessitating such leave, and therefore plaintiff cannot bring an action under Ohio law for pregnancy discrimination. Based on that premise, it points out that Plaintiff voluntarily returned to work part-time during six days between the

---

4. As noted *supra*, Plaintiff alleges that she applied for unpaid medical leave under Concord's disability and medical leave policy. The Request for Time Off, attached to her Complaint as Exhibit A, indicates that her leave was Family and Medical Leave, not Disability Leave. The Family and Medical Leave Act, to which the Request form presumably refers, entitles eligible employees to twelve weeks of unpaid leave during a twelve month period due to, among other things, the birth of a child. The FMLA provides that on return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 C.F.R. § 825.214(a). The Court notes that Plaintiff has not alleged a claim under the FMLA, although the Manual provides for such leave, and that she has argued her pregnancy discrimination claim only with reference to the disability leave provisions.

birth of her child and the time that her scheduled leave began.[5] Defendant therefore argues that Plaintiff did not physically need leave when she began her scheduled leave on March 11, 1999. As stated by Defendant in its reply memorandum, "Upon returning to work and demonstrating that she was not 'disabled,' it is clear that Plaintiff no longer needed to take leave in connection with her pregnancy or her childbirth. Rather, it appears that Plaintiff wanted to take leave in order to spend time with her new child. There is, of course, nothing wrong with that. However, as discussed above, employees on such leave are not entitled to the protection otherwise provided to pregnant employees under the Ohio Civil Rights Act, the Ohio Administrative Code, and the Pregnancy Discrimination Act." (Doc. # 14 at 2–3).

Defendant misconstrues Ohio law regarding maternity leave. The Ohio Administrative Code states, in pertinent part:

(G) Pregnancy and childbirth. * * *

(2) Where termination of employment of an employee who is temporarily disabled due to pregnancy or a related medical condition is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination. * * *

(5) Women shall not be penalized in their conditions of employment because they require time away from work on account of childbearing. When, under the employer's leave policy the female employee would qualify for leave, then childbearing must be considered by the employer to be a justification for leave of absence for female employees for a reasonable period of time. For example, if the female meets the equally applied minimum length of service requirements for leave time, she must be granted a reasonable leave on account of childbearing. Conditions applicable to her leave (other than its length) and to her return to employment shall be in accordance with the employer's leave policy.

(6) Notwithstanding paragraphs (G)(1) to (G)(5) of this rule, if the employer has no leave policy, childbearing must be considered by the employer to be a justification for leave of absence for a female employee for a reasonable period of time. Following childbirth, and upon signifying her intent to return within a reasonable time, such female employee shall be reinstated to her original position or to a position of like status and pay, without loss of service credits.

Ohio Admin. Code § 4112–5–05(G). The Ohio Administrative Code plainly indicates that new mothers "must be granted a reasonable leave on account of childbearing." Ohio Admin. Code § 4112–5–05(G)(5); *Frazier v. Practice Resource Mgt. Group, Inc.,* 1995 WL 390792 (June 27, 1995)("an employer need not have a policy allowing unlimited maternity leave: an employer is required only to have a reasonably adequate policy of maternity leave which should be applied on the same terms and conditions as for other disabilities."). Denial of maternity leave mandated by the Ohio Administrative Code "is, in effect, terminating the employee because of her pregnancy." *Frank v. Toledo Hosp.,* 84 Ohio App.3d 610, 617, 617 N.E.2d 774, 779 (1992). Under Ohio Admin. Code § 4112–5–05(G), a new mother is not required to prove that she is unable to work after childbirth in order to be entitled to reasonable maternity leave under that pro-

---

**5.** According to Mr. Pastor, Plaintiff worked 6.2 hours on March 3, 1999; 6.0 hours on March 4, 1999; 5.4 hours on March 5, 1999; 7.0 hours on March 8, 1999; 3.4 hours on March 9, 1999; and 2.4 hours on March 10, 1999 (Pastor Aff. ¶ 7).

vision. The fact that she recently gave birth to a child is sufficient. Moreover, the fact that Plaintiff did return to work, *upon Defendant's request,* immediately after giving birth does *not* establish that she did not require, or that she was not entitled to, maternity leave.[6] Defendant is not entitled to summary judgment on this ground.

 Defendant further argues that Plaintiff cannot claim that her leave was unreasonable. It contends that it maintained a reasonably adequate policy for maternity leave that was applied on the same terms and conditions as for other disabilities. It further states that Plaintiff had approximately twelve weeks of leave, which it contends constituted twice the leave that most new mothers receive.[7] Plaintiff does not appear to challenge Defendant's assertion that Concord's disability leave policy is nondiscriminatory on its face. In other words, she does not argue that Defendant's policy provides either no or inadequate maternity leave. Rather, she challenges the *application* of that policy, stating that she was treated differently than nonpregnant individuals taking such leave. To the extent that Defendant is asserting that Plaintiff received a reasonable amount of leave, Plaintiff does not appear to be arguing that 86 days is an *un*reasonable (*i.e.,* unreasonably short) length of time for maternity leave. However, she has asserted, and provided evidence in support, that she was approved for leave until June 14, 1999, and that she was discharged prior to that time for discriminatory reasons. The fact that Defendant has a policy does not establish, as a matter of law, that it was applied in a nondiscriminatory manner to Plaintiff. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's pregnancy discrimination claim on the ground that she received a reasonable amount of maternity leave prior to her termination. Defendant's Motion for Summary Judgment on Plaintiff's Pregnancy Discrimination Clam is OVERRULED.

### III. Breach of Contract Claim (Count Two)

Defendant asserts that it is entitled to summary judgment on Plaintiff's breach of contract claim. In her memorandum, Plaintiff agrees that she does not have a cause of action, based on Concord's Employee Manual. Accordingly, Defendant's Motion for Summary Judgment on Plain-

---

6. The Court further notes that if Concord is asserting that, under its disability policy, it is *not required to provide any* leave due to childbirth, unless the new mother is physically unable to work, then Defendant has, by operation of law, stated that it does not have a maternity leave policy, but rather solely a disability policy. Under such circumstances, Ohio Admin. Code § 4112–5–05(G)(6) would apply. Under that provision, childbearing must be considered by the employer to be a justification for a leave of absence for a female employee for a reasonable period of time and the employee must be reinstated. *See Morse v. Sudan, Inc.,* 1994 WL 422290 (Aug. 11, 1994)(affirming application of Ohio Admin. Code 4112–5–05(G)(6) where employer permanently replaced all females who took maternity leave, stating that leave policy was illusory).

7. The Court is confused by this argument. Defendant has provided no evidentiary support that six weeks leave is the norm for maternity leave, nor that Plaintiff's request for leave until June 11, 1999, was excessive. Moreover, Defendant's disability leave policy, which it asserts covers maternity leave, states that such leave may be granted for up to ninety (90) days and that extensions may be requested in thirty (30) day increments for a maximum of six (6) months. If Defendant is arguing that Plaintiff was only entitled to six weeks (42 days) of leave, while other persons with temporary disabilities are entitled to up to ninety days, then Defendant is conceding that pregnant individuals are not treated the same as others with temporary disabilities.

tiff's breach of contract claim (Count Two) is SUSTAINED.

### IV. *Promissory Estoppel Claim (Count Three)*

■ To recover under the doctrine of promissory estoppel, a plaintiff must establish that: (1) the defendant made a clear, unambiguous promise; (2) the defendant should have reasonably expected the promise to induce action or forbearance on the part of the plaintiff; (3) the promise actually induced action or forbearance that was detrimental to the plaintiff; and (4) enforcement of the promise is necessary to avoid injustice. *Fisher v. Trinova Corp.*, No. 96–3918, 1998 WL 774111 at *9 (6th Cir. Oct.13, 1998); *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 488 (6th Cir.1995); *Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 570 N.E.2d 1095, 1098 (1991); *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Defendant argues that Plaintiff has not alleged a clear and unambiguous promise or reliance on any promise of job security.

■ In her Complaint, Plaintiff states that she relied on the disability and medical leave policies as set forth in the Manual. As noted by Defendant, the Manual states, in pertinent part:

> In the case of pregnancy, please inform CED/Concord as soon as possible of the date you and your doctor anticipate that you will begin your leave. Your job status will be protected to the extent that we will make every effort to allow you to return to your former work, or similar work if available, for which you may be qualified.

(Manual at 39). The Returning From A Leave of Absence provision similarly states, in pertinent part:

> You must notify the Company at least fifteen (15) days prior to your expected return date[ ] that you intend to return from a leave of absence. When you return, you will be placed on your regular job if such position remains and is available. IF CED/Concord has had to eliminate or fill your position while you were on leave, you will be assigned to an open position for which your are properly qualified. If no such position exists, you will be placed on layoff status.

(Manual at 41). Defendant argues that because the Manual does not make any clear and unambiguous promise that Plaintiff would be returned to her former position upon returning from leave, her promissory estoppel claim must be dismissed.

In response, Plaintiff argues that she received a specific promise of continued employment from Mr. Naragon. Specifically, she states in her affidavit:

> Upon learning I was pregnant with our second child, on January 26, 1999, I submitted a request for unpaid medical leave to Concord's District Manager for the property, Dan Naragon. Dan approved my request for leave and we agreed that it would begin on March 11, 1999 and continue until my return date of June 11, 1999. During our discussion of my leave, Dan said that since June 11th was a Friday, he would prefer that I return on the following Monday, June 14, 1999, rather than be issued a paycheck for only the one day in the previous pay period. He told me there would not be any problems for my return on that date.

Woodworth Aff. ¶ 4. Plaintiff argues that she continued her approved leave based on this promise, until she was informed that she had lost her job as a result of such leave. With regard to the Manual, Plaintiff argues that the accepted practice at Concord was "that an employee could count on taking her approved amount of leave and then returning to work." (Doc. # 13 at 14) Thus, she asserts, there is a disparity between the actual and the written policies.

Even accepting Plaintiff's evidence that Mr. Naragon made a promise to her that she would have no problem taking leave until June 14, 1999, the Manual precludes Plaintiff's promissory estoppel claim. Page two of the Manual explicitly states, "No one other than the President of CED/Concord may alter or modify any of the policies in this Manual. No statement or promise by a Supervisor, Manager, or Department Head may be interpreted as a change in policy nor will it constitute an agreement with an employee." Due to this disclaimer, Plaintiff could not have reasonably relied upon Mr. Naragon's promise of continued employment, until June 14, 1999.[8] Accordingly, Defendant is entitled to summary judgment on Plaintiff's promissory estoppel claim.[9]

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 4–2) is SUSTAINED in PART and OVERRULED in PART. Plaintiff's claims for breach of contract and promissory estoppel are dismissed, with prejudice. Plaintiff's pregnancy discrimination claim, pursuant to Ohio Rev.Code Ch. 4112 remains in this litigation.

8. On March 12, 1996, Plaintiff acknowledged that she had received a copy of the Manual (Pastor Aff. Ex 2).

9. In her memorandum, Plaintiff notes that the parties have not engaged in discovery, and she requests, as an alternative argument, an opportunity for discovery, pursuant to Fed. R.Civ.P. 56(f). In her affidavit, she supports her request, stating "No discovery has been sought of the Defendant while the decision on the Court's jurisdiction has been pending, and additional time to do so may become necessary to support the claims herein." (Woodworth Aff. ¶ 1) Plaintiff has not indicated what additional relevant evidence might be necessary to support her promissory estoppel claim. *See Cacevic v. City of Hazel Park,* 226 F.3d 483, 487–89 (6th Cir.2000). In light of the facts that Plaintiff has been able to provide evidence of the circumstances surrounding the alleged promise and her reliance upon the promise, and, further, given that the Manual is in evidence, the Court considers it appropriate to grant summary judgment to the Defendant without the opportunity for discovery on that claim. If Plaintiff believes, upon review of this Decision, that specifically focused discovery could create a genuine issue of material fact on this issue, Plaintiff may file a motion for reconsideration on this claim.